UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
PAUL MARKS,                         )
      Plaintiff                     )
                                    )
              v.                    )   C.A. No. 15-10157-MLW
                                    )
MRD  CORP.  D/B/A/  ROUTE  44       )
HYUNDAI   and   AMERICREDIT         )
FINANCIAL   SERVICES,   INC.        )
D/B/A/ GM FINANCIAL,                )
      Defendants                    )
```

MEMORANDUM AND ORDER

WOLF, D.J.                              September 12, 2016

Paul Marks has sued defendants MRD Corporation d/b/a Route 44 Hyundai, a car dealership in Raynam, Massachusetts ("MRD"), and AmeriCredit Financial Services, Inc. d/b/a GM Financial ("AmeriCredit") (collectively, the "defendants"), for violations of the Truth in Lending Act, 15 U.S.C. §1638(a)(2)-(4) ("TILA") and the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq, as well as additional state law claims. Marks alleges, in essence, that: (1) on May 23, 2014, he purchased a new 2014 Hyundai Elantra automobile from MRD; (2) MRD substituted the finance agreement Marks executed on May 23, 2014 for a second, unsigned agreement; (3) MRD assigned the second finance agreement to AmeriCredit; and (4) the defendants have improperly sought to repossess the vehicle under the second agreement. Defendants have filed a motion to dismiss, which Marks opposes. Marks has filed a motion to amend the complaint to add a claim for violation of the Fair Debt

1

Collection Practices Act, 15 U.S.C. $1692 et seq., ("FDCPA")
against AmeriCredit, which defendants oppose.  MRD has also
requested a hearing to determine whether MRD may repossess the
2014 Hyundai Elantra.

The Motion to Amend does not affect the merits of the Motion
to Dismiss.  It is, therefore, being allowed.  For the reasons
explained in this Memorandum, the Motion to Dismiss is also being
allowed.  The federal claims for violations of the TILA, Equal
Credit Opportunity Act, and the FDCPA are being dismissed with
prejudice.  In essence, the central premise underlying these
claims, Marks' allegations that MRD unilaterally created a second
finance agreement, is implausible.  The pendant state claims are
being dismissed without prejudice to refiling in a court of the
Commonwealth of Massachusetts.  The request for hearing concerning
repossession in this case is being denied without prejudice to
being reinstituted in state court.

I.   PROCEDURAL HISTORY

Marks' complaint against defendants MRD and AmeriCredit
contains nine counts.  Marks alleges: (1) violations of the Truth
in Lending Act, 15 U.S.C. $1638(a)(2)-(4), and related
regulations; (2) violations of the Equal Credit Opportunity Act,
15 U.S.C. $1691 et seq; (3) violations of Article 9 of
Massachusetts' Uniform Commercial Code; (4) common law fraud; (5)
breach of the covenant of good faith and fair dealing; (6)

2

conversion; (7) violations of Massachusetts General Laws Chapter 93A and related regulations; (8) liability under the Federal Trade Commission ("FTC") Holder Rule, 16 C.F.R. §433; and (9) violation of the Massachusetts Retail Installment Sales of Motor Vehicle Act, Mass. Gen. Laws ch. 255B, §§2, 19A, by MRD for failing to be licensed as a motor vehicle finance company.

MRD filed a Motion to Dismiss and supporting Memorandum (the "MTD Memorandum"). Americredit later joined the Motion to Dismiss. Marks filed an Opposition (the "MTD Opposition"). Marks also filed a Motion to Amend the Complaint with a proposed Amended Complaint. On July 25, 2015, defendants filed an Opposition (the "Amendment Opposition"). On January 12, 2016, the court granted Marks leave to file a reply. Marks filed the Reply on March 14, 2016, 48 days late.

MRD subsequently filed a motion requesting the court to either hold a hearing to allow MRD to repossess the 2014 Hyundai Elantra for non-payment of the loan or, in the alternative, order Marks to make 12 past-due loan payments (the "Motion to Repossess"). Marks filed an opposition.

## II. APPLICABLE STANDARDS

### A.   Motion to Amend

A party may amend a pleading as a matter of right if the amendment is filed within 21 days of an answer or motion pursuant to Federal Rule of Civil Procedure 12(b). See Fed. R. Civ. P.

15(a)(1)(B).  In all other circumstances, the court may permit a party leave to amend its pleadings, and it "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962).  Leave to amend should be allowed unless there is an "apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182; see also Glassman v. Computervision Corp., 90 F.3d 617, 622 (1st Cir. 1996).  When considering whether amendment would be futile, "the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." Glassman, 90 at 623 ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.").

   B.  <u>Motion to Dismiss</u>

    Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading standard does not require "detailed factual allegations," but requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A court may disregard

"bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008); see also Penalbert-Roia v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011).

"The plaintiff's factual allegations are ordinarily assumed to be true in passing on the adequacy of the complaint, which need not plead evidence." Penalbert-Roia, 631 F.3d at 595. "But 'ordinarily' does not mean 'always': some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 n. 5 (2007)). The First Circuit has refused to "lay down a mechanical rule," stating instead that "sometimes a threadbare factual allegation bears insignia of its speculative character and, absent greater concreteness, invites an early challenge—which can be countered by a plaintiff's supplying of the missing detail." Id.

A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." Twombly, 550 U.S. at 559. That is, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557). "The relevant inquiry focuses on the reasonableness of the inferences of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Ocasio-Hernandez, 640 F.3d at 13.

"Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Rodi v. Southern New England School of Law, 389 F.3d 5, 15 (1st Cir. 2004) (considering letters attached to the complaint in evaluating a motion to dismiss). However, there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993). When "a complaint's factual allegations are expressly linked to—and

6

admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). When such documents contradict an allegation in the complaint, the document trumps the allegation. See Clorox Co. P.R. v. Proctor & Gamble Consumer Co., 228 F.3d 24, 32 (1st Cir. 2000).

III. FACTS

Unless otherwise indicated, the facts alleged in the Complaint are as follows. Marks purchased a 2014 Hyundai Elantra and traded-in his 2013 Hyundai Elantra on May 23, 2014. MRD induced Marks to make the purchase by representing that his new monthly loan payments would not exceed $520 and his first payment would not be due for 90 days. When Marks arrived at the dealership, the terms of the financing offer changed to $561.48 per month starting 45 days from sale. Marks agreed to the sale and financing, believing it was complete. He executed a retail installment contract setting out these terms (the "Agreement"). Approximately one month after the purchase, MRD emailed Marks stating he needed a co-signer for the loan. MRD subsequently called Marks' employer daily despite Marks' requests that it not do so. Marks was terminated as a result. At some point, MRD began threatening to repossess the 2014 Hyundai Elantra.

Marks alleges that, at some point, he learned that the Agreement had never been assigned, that MRD unilaterally created a second loan, and that MRD assigned this second loan to AmeriCredit. Marks never signed an installment agreement for the second loan held by AmeriCredit and did not receive any disclosures concerning the second loan. In September 2014, Marks received his first billing statement from AmeriCredit, informing him that he was past due on the loan. He has not received a notice of default.

IV.   DISCUSSION

A.   The Motion to Amend

Marks asserts that he is entitled to amend as a matter of right. See Motion to Amend at 1 (asserting the motion is brought pursuant to Rule 15(a)(1)(B)). However, defendants' motion to dismiss was brought pursuant Federal Rule of Civil Procedure 12(b)(6). Therefore, Marx had 21 days after that date to amend as a matter of right. See F.R. Civ. P. 15(a)(1)(B) ("A party may amend its pleading once as a matter of course within . . . if the pleading is one to which a responsive pleading is required . . . 21 days after service of a motion under Rule 12(b) . . ."). Marks filed his Motion to Amend 35 days after MRD filed the Motion to Dismiss. Therefore, Marks is not entitled to amend as a matter of right.

The court is addressing the motion as a request for leave to amend, which should be "freely give[n] . . . when justice so

requires." Fed. R. Civ. P. 15(a)(2). The proposed Amended
Complaint attached to Marks' Motion to Amend adds the following
factual allegations:

> At some time prior to January 26, 2015, either Route 44
> or AmeriCredit hired Statewide Investigations of El
> Monte, California to repossess the 2014 Elantra.
>
> On or about January 26, 2015, a representative of
> Statewide Investigations entered Mr. Mark's property and
> attempted to repossess the vehicle.
>
> At no time prior to January 26, 2015, or as of the date
> of this filing, did either Route 44 or AmeriCredit
> delivered to Mr. Marks a written notice of default or
> right to cure.
>
> The Defendant, AmeriCredit has and continues to report
> inaccurate data regarding the second finance agreement
> to credit bureaus. Mr. Marks has suffered a decreased
> credit rating as a result of this conduct.

Proposed Amended Compl. ¶¶32-35. The proposed Amended Complaint
adds related allegations to Counts III and VII of the Complaint.
See id. ¶54, 74-74, 76(h)-(i). Finally, it also adds a claim for
violation of the Fair Debt Collection Practices Act (the "FDCPA"),
asserting that AmeriCredit violated the Act by threatening to, and
attempting to, repossess the 2014 Hyundai Elantra, and by filing
false information with credit bureaus. See id. ¶¶87-92.

Defendants argue that the Motion to Amend should be denied
because: (1) Marks delayed before seeking to amend; and (2)
amendment would be futile. They assert that the motion is untimely
because the new allegations relate primarily to defendants'
alleged attempt to repossess the 2014 Hyundai Elantra, which

occurred only four days after the original Complaint was filed. See Amendment Opposition at 3. The Motion to Amend was not filed until five months after the events and several weeks after the Motion to Dismiss. See id. at 3-4. They also assert that other newly alleged facts were known by Marks when he filed the original complaint. See id. at 4. Defendants also argue that amendment would be futile because: (1) the added allegations do not bolster Marks' initial claims; and (2) the proposed Amended Complaint fails to state a claim under the FDCPA.

Marks did not file a separate memorandum of law in support of the Motion to Amend, as required by Rule 7.1(b)(1) of the Local Rules of the United States District Court for the District of Massachusetts (the "Local Rules"). See Local Rule 7.1(b)(1). The Motion to Amend could be denied for this reason alone. See Local Rule 1.3. ("Failure to comply with any of the directions or obligations set forth in . . . these Local Rules may result in dismissal, default, or the imposition of other sanctions as deemed appropriate by the judicial officer.").

However, the Motion to Amend is being allowed. Defendants will not be prejudiced by the amendment. The period of time between the complaint and the motion to amend does not constitute sufficient delay to prejudice the defendants, especially as the parties have yet to conduct discovery. See Nasson v. Van Winkle, No. CIV. A. 91-11823-WF, 1994 WL 175049, at *1 (D. Mass. Apr. 19,

1994).  The court is addressing defendants' futility arguments in the analysis of the Motion to Dismiss.  See Glassman, 90 F.3d at 623 (explaining futility standard is the same as the standard for assessing a motion to dismiss under Rule 12(b)(6)); Springer v. Spencer, No. CIV. 13-10083-FDS, 2014 WL 2515694, at *5 (D. Mass. June 3, 2014) ("If the more-detailed amended complaint would not withstand a motion to dismiss, then the original complaint would not either, and therefore there is no reason to consider them separately. Accordingly, to determine whether amendment is futile, the Court will address defendants' motion to dismiss and plaintiffs' motion to amend in tandem.").

B.   The Motion to Dismiss

Defendants argue that the case should be dismissed because Marks does not dispute that he executed the Agreement, took delivery of the 2014 Hyundai Elantra, and has not made payments on the loan.  In particular, they argue that Marks' allegations that MRD unilaterally created a second retail installment agreement are false and insupportable.

Marks does allege that MRD terminated the Agreement and unilaterally created a second retail finance agreement that Marks never executed.  See Am. Compl. ¶28.  As explained earlier, the Court must accept all "well-pleaded facts as true" and grant plaintiffs "the benefit of all reasonable inferences."  Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015).

However, the court need not accept "bald assertions[ or] unsupportable conclusions . . ." Citigroup, 535 F.3d at 52. When properly considered documents contradict an allegation in the complaint, the document trumps the allegation. See Clorox, 228 F.3d at 32.

For example, in Penalbert-Rosa, the plaintiff sued the governor of Puerto Rico and his chief of staff, alleging that she had been terminated from her employment as part of a political purge. See 631 F.3d at 594-95. The First Circuit affirmed dismissal of the complaint, concluding that "nothing beyond speculation supports the [] assertion that the governor or his chief of staff participated in the decision to dismiss Penalbert." Id. at 596.

Similarly, in Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009), the plaintiff sued a Mayor for a program that seized and killed household pets. Maldonado, 568 F.3d at 266. The First Circuit reversed the district court's denial of the mayor's motion to dismiss the plaintiff's claim that the Mayor violated her right to substantive due process. See id. at 274. The court explained:

> There is a generalized allegation that the Mayor planned, personally participated in, and executed the raids in concert with others, but the others are named as the persons with specific administrative responsibilities as to the public housing complexes. "These bare assertions, much like the pleading of conspiracy in Twombly, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional [tort]," Iqbal, at 1951 (quoting Twombly,

> 550 U.S. at 555), and are insufficient to push the
> plaintiffs' claim beyond the pleadings stage. Moreover,
> the complaint alleges, without any more details, that
> the Mayor was among all the other public and private
> employees "snatching pets from owners." Although these
> bare allegations may be "consistent with" a finding of
> liability against the Mayor for seizure of the same pets,
> such allegations "stop[ ] short of the line between
> possibility and plausibility of 'entitlement to relief'"
> on the larger substantive due process claim. Iqbal, at
> 1960 (quoting Twombly, 550 U.S. at 557) (internal
> quotation marks omitted).

Id.

The instant case is comparable to Penalbert-Rosa and Maldonado. Marks asserts that he "learned that [MRD] attempted to unilaterally create a second credit contract with AmeriCredit" and that he never signed any documents or received any disclosures related to this alleged "second loan." Am. Compl. ¶¶28-30. The Amended Complaint does not describe how Marks "learned" of the purported second loan. When defendants challenged the adequacy of the accusation, Marks did not respond by supplying any further details that would support the claim. See Penalbert-Rosa, 631 F.3d at 595.

Marks' allegations about the second loan are too "threadbare [and] speculative" for the court to accept as true. See id. Marks admits that he signed the Agreement when he purchased the 2014 Hyundai Elantra. See Am. Compl. ¶16. He does not dispute the authenticity of the Agreement, which is not conditioned on any subsequent events and contains a statement, which Marks separately

signed, stating that the Agreement can only be amended in writing. See Agreement.[1]  The Agreement states that it was being assigned to AmeriCredit.  See id.  Marks took possession of the 2014 Hyundai Elantra, and the Amended Complaint states that the vehicle was successfully registered.  See Am. Compl. ¶19.

The Amended Complaint confirms that Marks understood the Agreement would be assigned to AmeriCredit, that he received a billing statement from AmeriCredit, that defendants have threatened to repossess the 2014 Hyundai Elantra, and that defendants assert that Marks has defaulted on loan payments.  See Am. Compl. ¶¶22, 24, 31.  The only plausible inference from these facts is that the parties' dispute is governed by the Agreement and not by the implausible claim that there was a second agreement with different material terms.

Marks asserts three federal claims in the Amended Complaint. Count I alleges that defendants violated the TILA and the related Regulation Z by failing to disclose accurately the finance charge, the amount financed, and the annual percentage rate.  See Am. Compl. ¶38.  It also alleges that defendants violated the Act by "failing to deliver any disclosures to Mr. Marks in a form he

---

[1] Both parties attach copies of the Agreement to their memoranda. See Motion to Dismiss, Ex. 1; Amendment Opposition, Ex. 3; MTD Opposition.  The court may consider the Agreement because it is incorporated into the Complaint and central to Marks' claims. See Watterson, 987 F.2d at 3-4.

could keep prior to consummation of the transaction." Id. ¶39.  These allegations are contradicted by the Agreement.

The Agreement contains a conspicuous section entitled "Truth-In-Lending Disclosures" that identifies all of the information the Amended Complaint alleges was not provided to Marks.  See Agreement.  Directly above Marks' signature on the Agreement is a statement that reads in relevant part "You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it.  You confirm that you received a completely filled-in copy when you signed it."  The express terms of the Agreement refute Marks' allegations. See Clorox, 228 F.3d at 32.

Count II alleges that MRD granted credit to Marks in the Agreement, but then withdrew the credit when it could not assign the loan to AmeriCredit. See Am. Compl. ¶42.  It asserts that MRD never disclosed that its offer of credit was conditional, and contends that MRD violated the Equal Credit Opportunity Act by giving Marks credit approval and then terminating it.  See id. ¶¶42-48.  As explained earlier, Marks' allegations that MRD unilaterally terminated the Agreement and created a second loan are implausible.  Therefore, Count II does not allege a claim on which relief could be granted.

Finally, Count X alleges that AmeriCredit violated the FDCPA by "threatening and attempting to repossess the vehicle without notice of default," in violation of 15 U.S.C. §1692(f)(6), and by

15

"communicating false credit information to the credit bureaus," in violation of 15 U.S.C. §§1692(e)(2), (8). See Amended Complaint ¶¶91-92. These two sections of the FDCPA govern the actions of "debt collectors." See, e.g., 15 U.S.C. §1692(e) ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."). However, "[c]reditors collecting on their own accounts are generally excluded from the statute's reach." Chiang v. Verizon New England Inc., 595 F.3d 26, 41 (1st Cir. 2010) (citing 15 U.S.C. §1692a(6)(F)(ii)). The Amended Complaint alleges that AmeriCredit had taken assignment of the loan. See Am. Compl. ¶89. Consequently, it is alleged that it was attempting to collect on its own account. Therefore, the Amended Complaint does not allege a plausible claim that AmeriCredit violated the FDCPA. See Penalbert-Rosa, 631 F.3d at 595; Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012).[2]

Marks also alleges in Count VIII of the Amended Complaint that "AmeriCredit is liable for any claims against [MRD]" pursuant to the FTC's "Holder Rule." See Am. Compl. ¶¶79-81. The "Holder Rule" is not an independent cause of action. Instead, it provides that a holder of a consumer credit contract is "subject to all claims and defenses which the debtor could assert against the

---

[2] Marks does not allege that AmeriCredit called his employer. Rather, he asserts MRD did that. See Am. Compl. ¶23.

seller of goods or services obtained" through the contract.    16
C.F.R. §433.2(a).  Therefore, it creates potential joint liability
for violations by the original seller and does not create any cause
of action.  Accordingly, as the federal claims against MRD have
been dismissed, Marks has not alleged any plausible federal claim
under the "Holder Rule" on which relief could be granted.

Marks' remaining pendent state law claims are being dismissed
without    prejudice.    Federal    courts    have    "supplemental
jurisdiction" over state-law claims that are related to federal
claims.  See 28 U.S.C. §1367.  When a federal court dismisses the
"foundational federal claims, it must reassess its jurisdiction"
taking into consideration various factors including "interests of
fairness, judicial economy, convenience, and comity."  Camelio v.
Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  "As a general
principle, the unfavorable disposition of a plaintiff's federal
claims at the early stages of a suit, well before the commencement
of trial, will trigger the dismissal without prejudice of any
supplemental state-law claims."  Rodriguez v. Doral Mortgage
Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); see also Parker v.
Hurley, 474 F. Supp. 2d 261, 278 (D. Mass. 2007) aff'd, 514 F.3d
87 (1st Cir. 2008).

The circumstances of this case justify dismissal of the
pendent state law claims.  First, the case is still in the early
stages.  No answer or counterclaims have been filed.  Second,

17

interests of comity and judicial economy favor requiring litigation of state law claims in the courts of the Commonwealth of Massachusetts. Marks' claims require interpretation of various provisions of Massachusetts law, including: whether MRD was required to be licensed as a "sales finance company" under Mass. Gen. Laws ch. 255B, §2 (see Am. Compl. ¶¶82-86); whether a violation of the Massachusetts Retail Installment Sales of Motor Vehicle Act imposes liability under Massachusetts Chapter 93A (see Am. Compl. ¶76(g)-(h)); and how the provisions of Massachusetts Uniform Commercial Code Article 9 interact with the Massachusetts Retail Installment Sales of Motor Vehicle Act, Chapter 255B (see Am. Compl. ¶¶51-55). It is most appropriate that these issues be decided by a Massachusetts trial court, subject to appeals and authoritative decisions in the appellate courts of the Commonwealth.

MRD requests a hearing on its right to repossess the 2014 Hyundai Elantra pursuant to Mass. Gen. Laws ch. 255B, §20B(b). See Motion to Repossess at 3 (quoting Mass. Gen. Laws ch. 255B, §20B(b)). This procedure is only available after the lienholder has satisfied the notice and cure provisions of Mass. Gen. Laws ch. 255B, §20A and filed an action for possession. See Mass. Gen. Laws ch. 255B, §§20A(b), 20(B)(b). MRD has not asserted any counterclaims in this action and has not indicated whether it has satisfied the requirements of §20A. These issues are most

appropriately decided by the courts of the Commonwealth of Massachusetts.

Therefore, the court is declining to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the pendent state claims are being dismissed without prejudice.

V.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   Plaintiff's Motion to Amend the Complaint (Docket No. 19) is ALLOWED.

2.   The Motions to Dismiss (Docket Nos. 13 & 30) are ALLOWED. Counts I, II, and X are DISMISSED with prejudice. All other claims are DISMISSED without prejudice.

3.   Defendant MRD's Motion to Repossess Motor Vehicle (Docket No. 21) is DENIED without prejudice to being reinstituted in the courts of the Commonwealth of Massachusetts.


UNITED STATES DISTRICT JUDGE